DECISION AND JUDGMENT ENTRY
{¶ 1} Raymond Ward appeals his 54-year prison sentence imposed by the Meigs County Common Pleas Court. A jury found Ward guilty of six counts of rape, and the court imposed six separate 9-year sentences to run consecutive to each other. On appeal, Ward contends that the trial court violated R.C. 2929.11(B) when it sentenced him because his sentence is not "consistent with other sentences imposed for similar crimes committed by similar offenders." Because we cannot clearly and convincingly find that the trial court failed to consider the statutory guidelines or that Ward's sentence is otherwise contrary to law, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. *Page 2 {¶ 2} A Meigs County Grand Jury indicted Ward for, inter alia, six counts of rape (involving a victim under the age of 13) in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree. Ward entered not guilty pleas, and the case proceeded to a jury trial.
 {¶ 3} The 12-year-old victim testified that Ward is her uncle, and that Ward raped her on separate days when she stayed at her aunt's and uncle's home overnight. The 29-year-old Ward, over a period of months, progressed from touching her to penetrating her vagina with his penis. Over this period of time, he placed his hand between her legs; rubbed his hand up her leg; undressed her; kissed her breasts; used his finger and tongue to penetrate her vagina; tried to insert his erected penis in her vagina but she crossed her legs to stop him; inserted his erected penis in her vagina without her trying to stop him; and with his wife's permission, had sex with her in his bedroom over a two hour period by inserting his penis into her vagina.
 {¶ 4} Ward told her that they were going to get married and raise kids in the mountains. Ward also told her that he preferred having sex with her because she was "tighter" than his wife. Ward told someone else that he liked "younger, tighter girls."
 {¶ 5} The jury found Ward guilty of each of the six rapes. The court sentenced Ward accordingly. Ward appealed his six convictions and sentences. We affirmed his convictions but remanded the matter for re-sentencing based on the Supreme Court of Ohio's decision in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856. See State v. Ward, Meigs App. No. 05CA13, 2007-Ohio-2531.
 {¶ 6} At the re-sentencing hearing, the court heard from the State, Ward, Ward's counsel, the victim (through her statement), and the victim's mother (through her *Page 3 
statement). The court, who presided over the jury trial, also considered the presentence investigation.
 {¶ 7} Ward, through his counsel, provided the trial court with three cites to cases involving other defendants convicted of similar offenses. He argued that he should receive a similar sentence. The court did not give the three cases any weight because it stated that, unlike Ward's case, those cases involved plea agreements.
 {¶ 8} The court re-sentenced Ward to the same sentence as it had imposed earlier. That is, the court imposed six separate 9-year prison sentences to run consecutive to each other for a total of 54 years.
 {¶ 9} Ward appeals his 54-year prison sentence and asserts the following assignment of error: "The Gross Disproportionality of the Defendant's Sentence Violates the Terms of Ohio Revised Code Section 2929.11."
 II. {¶ 10} Ward contends in his sole assignment of error that the trial court erred when it sentenced him.
 A. Our Standard of Review {¶ 11} The trial court re-sentenced Ward after the Supreme Court of Ohio decided Foster, supra. The Foster court held that the portions of Ohio's statutory sentencing scheme that required sentencing courts to make factual findings or give its reasons for imposing maximum, consecutive, or more than minimum, sentences are unconstitutional. Id. at paragraphs 1-6 of the syllabus. The Court severed those portions of the sentencing statutes but retained the portions of the sentencing statutes that do not violate the constitution. Id. at ¶ 96. "Trial courts have full discretion to *Page 4 
impose a prison sentence within the statutory range, and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus.
 {¶ 12} While the Foster court declared that a sentencing court possesses full discretion in sentencing an offender, the court abrogated R.C. 2953.08(G), which defines the appellate court's role in sentencing, only "insofar as it applies to the severed sections" of Ohio's statutory sentencing scheme. Foster at ¶¶ 97-99. Thus, even after Foster, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds * * * [t]hat the sentence is otherwise contrary to law." State v.Vickroy, Hocking App. No. 06CA4, 2006-Ohio-5461, ¶ 15, citing R.C.2953.08(G); see, also, State v. Saxon, 109 Ohio St.3d 176,2006-Ohio-1245, ¶ 4, fn. 1 (stating that "the sentencing review statute, R.C. 2953.08(G), remains effective, although no longer relevant with respect to the statutory sections severed by Foster"); State v.Rhodes, Butler App. No. CA2005-10-426, 2006-Ohio-2401.
 {¶ 13} Under this statutory standard, we neither substitute our judgment for that of the trial court nor simply defer to its discretion.State v. Mustard, Pike App. No. 04CA724, 2004-Ohio-4917, ¶ 19, citingState v. Keerps, Washington App. No. 02CA2, 2002-Ohio-4806; State v.Dunwoody (Aug. 5, 1998), Meigs App. No. 97CA11. Rather, we look to the record to determine whether the sentencing court considered and properly applied the statutory guidelines and whether the sentence is otherwise contrary to law. See State v. Parrish, Montgomery App. No. 21206,2006-Ohio-4161, ¶ 62.
 B. Meaning of "Consistent" Sentence Under R.C.2929.11(B) *Page 5 {¶ 14} Ward contends that the trial court violated R.C. 2929.11 (B) because his 54-year prison sentence is not "consistent with sentences imposed for similar crimes committed by similar offenders."
 {¶ 15} R.C. 2929.11(B) states in relevant part that "[a] sentence imposed for a felony shall be * * * consistent with sentences imposed for similar crimes committed by similar offenders." As this court has noted, "the General Assembly has not identified the means by which the courts should attain this goal." State v. Wilson, Washington App. No. 04CA18, 2005-Ohio-830, ¶ 41, citing State v. Miniard, Gallia App. No. 04CA1, 2004-Ohio-5352, ¶ 53, and State v. McSwain, Cuyahoga App. No. 83394, 2004-Ohio-3292, ¶ 47. "Courts do not have the resources to assemble reliable information about sentencing practices throughout the state." Id., citing Miniard, and State v. Haamid, Cuyahoga App. Nos. 80161 and 80248, 2002-Ohio-3243.
 {¶ 16} Regardless, this court has held that "[a]n offender cannot demonstrate inconsistency merely by supplying a list of cases where other defendants in other cases received prison sentences that differed from his." Wilson at ¶ 42. Instead, "[e]ach case is necessarily, by its nature, different from every other case — just as every person is, by nature, not the same." Id., citing State v. Lathan, Lucas App. No. L-03-1188, 2004-Ohio-7074, ¶ 25. "The goal of the sentencing guidelines is consistency, not uniformity." State v. Coburn, Adams App. No. 03CA774, 2004-Ohio-2997, ¶ 17.
 {¶ 17} Imposing consistent sentences "requires a trial court to weigh the same factors for each defendant, which will ultimately result in an outcome that is rational and predictable." Wilson at ¶ 42. "Under this meaning of `consistency,' two defendants convicted of the same offense with a similar or identical history of recidivism could *Page 6 
properly be sentenced to different terms of imprisonment." Id., citingState v. Georgakopoulos, Cuyahoga App. No. 81934, 2003-Ohio-4341, ¶ 26. In fact, "there is no requirement that co-defendants receive equal sentences." State v. Lopez, Muskingum App. No. CT2006-0014,2006-Ohio-6800, ¶ 24.
 {¶ 18} Therefore, in order for Ward to succeed on this issue, he must "show that the trial court failed to properly consider the factors and guidelines contained in the statutes, or that substantially similar offenders, committing substantially similar offenses, and having substantially similar records, behavior, and circumstances, received grossly disproportionate sentences." Coburn at ¶ 17.
 1. R.C. 2929.11 R.C. 2929.12 {¶ 19} In sentencing a felony offender, the sentencing court must consider the general guidance factors contained in R.C. 2929.11 and R.C.2929.12. Foster at ¶ 42. The court must impose a sentence that is reasonably calculated to achieve the two overriding purposes of felony sentencing, i.e., protecting the public from future crime by the offender and others and punishing the offender. R.C. 2929.11(A). It is within the court's discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in R.C.2929.11. R.C. 2929.12(A). However, the court must consider the factors set forth in R.C. 2929.12(B) and (C) relating to the seriousness of the offender's conduct and those set forth in R.C. 2929.12(D) and (E) relating to the likelihood of the offender's recidivism. R.C.2929.12(A). Additionally, the court may consider any other factor that it deems relevant to achieving the principles and purposes of sentencing. Id. *Page 7 
 {¶ 20} Here, our review of the record indicates that the trial court considered the statutory guidelines as required by R.C. 2929.11 and R.C.2929.12 when it sentenced Ward. First, the court indicated that it considered the principles and purposes of sentencing. Second, the court referred to the "seriousness" and "recidivism" factors under R.C.2929.12.
 {¶ 21} Ward agrees that the court considered the proper statutes, but he maintains that the court reached the wrong conclusions under R.C.2929.12. First, under the "seriousness" factors, Ward claims that the State failed to show "that any physical or mental injury occurred[.]" Second, under the "recidivism" factors, Ward generally states that the court should have found certain factors and not found other factors.
 {¶ 22} As we stated earlier, the court is not required to state its findings on the record. Here, the record shows that the court considered the proper statutes. In addition, contrary to Ward's assertion, the State did show that Ward caused "physical or mental injury" to his victim. The record shows that the victim suffered extreme psychological harm. She attempted suicide on more than one occasion. She went through months of counseling. She has horrible nightmares. She will sit and cry. She worries about what she will tell a potential husband. And some family members still blame her, not Ward.
 {¶ 23} Therefore, we find that the trial court properly considered the factors and guidelines contained in R.C. 2929.11 and R.C. 2929.12.
 2. Consecutive Sentences {¶ 24} Ward asserts that "[i]n addition to the [three cited] cases submitted to the trial court, other post-Foster cases point vividly to the trial court's abandonment of the *Page 8 
`principles and purposes of sentencing' in the case at bar. In State v.Reese, 2007-Ohio-6696, for example, the defendant was convicted of two counts of rape involving a woman handicapped by cerebral palsy. The court handed down a sentence of nine years on each of the two counts, but ran the sentences concurrently."
 {¶ 25} As we stated earlier, a defendant cannot show inconsistency in sentencing "merely by supplying a list of cases where other defendants in other cases received prison sentences that differed from his" because every case is different. Consistency, not uniformity, is the goal of the sentencing guidelines. Coburn, supra, at ¶ 17. As such, while Ward may have shown a lack of uniformity in his sentence, as compared to the cited cases, he has not shown inconsistency.
 {¶ 26} "[A]fter the sentencing court imposes a separate prison term for each conviction, it may exercise its discretion to determine whether consecutive sentences are appropriate based upon the particular facts and circumstances of the case. See State v. Saxon, 109 Ohio St.3d 176,2006-Ohio-1245, 846 N.E.2d 824, ¶ 9; State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus, ¶ 100 (Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences')." State v. Johnson, 116 Ohio St.3d 541,2008-Ohio-69, ¶ 18.
 {¶ 27} As we found earlier, the trial court considered "the particular facts and circumstances of the case" as they relate to the factors contained in R.C. 2929.11 and R.C. 2929.12. In addition, the court may consider "any other relevant factors[.]" R.C. 2929.12(B). This would include the factors in severed R.C. 2929.14(E)(4). Stated *Page 9 
differently, after Foster, the court is no longer required to state its reasons for consecutive sentencing, but it may consider the same factors that it considered before Foster. Griffin Katz, Ohio Felony Sentencing Law (2007 Ed.) 241-242, AC 2929.14-XVIII.
 {¶ 28} Here, we find that Ward's consecutive sentences are not contrary to law. First, under R.C. 2929.12(B)(1), (2), (6), the victim's serious psychological harm was exacerbated by the age difference between she and Ward. He was 29 years-old and the victim 12-years-old at the time of the six rapes. Further, Ward's "uncle" relationship with the victim helped facilitate the rape offenses.
 {¶ 29} Second, the record shows that Ward's consecutive sentences are "necessary to protect the public from future crime or to punish the offender[.]" See severed RC 2929.14(E)(4). Ward preyed on young females. He indicated that he liked "younger, tighter girls." He was seventeen years older than his victim.
 {¶ 30} The record further shows that Ward's "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" Id. Ward took advantage of his trusted position as uncle and used it to control the victim. He victimized her while she was a guest in his home. He came to her in the night after everyone retired. He gave her drugs. He put his hands on her and over time progressed to digital penetration, then to cunnilingus, and eventually to vaginal intercourse. He told her what to do, e.g., he directed her to take off her clothing and what position to assume. Knowing she cared for him, he gave her false hope that they would marry and go to West Virginia. Throughout the case, Ward did not show genuine remorse. *Page 10 
 {¶ 31} Finally, the record shows that "the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." Id. We discussed earlier Ward's course of conduct and the extreme psychological harm suffered by the victim that led to more than one suicide attempt.
 {¶ 32} Therefore, we find that the record supports a conclusion that "the particular facts and circumstances of the case" support consecutive sentences.
 3. Conclusion {¶ 33} Therefore, based on these facts, we find that Ward failed to "show that the trial court failed to properly consider the factors and guidelines contained in the statutes, or that substantially similar offenders, committing substantially similar offenses, and having substantially similar records, behavior, and circumstances, received grossly disproportionate sentences." Coburn at ¶ 17. Consequently, we cannot clearly and convincingly find that the trial court failed to consider the statutory guidelines or that Ward's 54-year prison sentence is otherwise contrary to law.
 {¶ 34} Accordingly, we overrule Ward's sole assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 11 
 JUDGMENT ENTRY
It is ordered that this JUDGMENT BE AFFIRMED and that Appellant shall pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion. *Page 1